This morning is number 05-7174, Buchanan v. Department of Veterans Affairs. Mr. Mooney? Good morning. Good morning. You have five minutes for rebuttal, correct? Correct, Mr. Chairman. All right. Okay, you can start whenever you're ready. Sure. May it please the Court, as you know, I'm Mike Mooney. I'm here on behalf of the veteran, Donald Buchanan. The sole legal issue in this appeal of veterans' benefits is whether or not the lower court properly interpreted the statute involved in this case. The statute itself says when a person, when a veteran is trying to prove that he has a service-connected problem, he's allowed to use a variety of evidence, including medical evidence and lay evidence. He's allowed to use it, but there's nothing that suggests that anyone is compelled to either believe it or credit it or give it a great deal of weight. Correct, but the fatal flaw of the lower court was it said as follows. It said that this evidence was not just not credible. It said it was not competent, and there's a world of difference between not credible evidence and incompetent evidence. On page 3 of the court's decision, which is in my appendix, page 5, the board examined the extensive records, including the several medical evaluations. Page 5? Page 5 of my appendix. Yeah, and which were on the page? At the very bottom? Very bottom. About six lines up. The board concluded. That there was no competent evidence of record to substantiate a conclusion that a psychiatric condition began during his first period of military service. Specifically, and then it says, well, why is this not competent? Well, there's no medical evidence, no contemporaneous medical evidence to support it, and these affidavits are of fairly ancient vintage. They're about 20 years after the fact. But that doesn't make them incompetent, and this is what the court held. It held that this statute, when it says there are two kinds of evidence you can use, medical evidence and lay evidence, before you can go into the lay evidence, you have to have simultaneously this medical evidence, contemporaneous medical evidence. That's not in the statute, and it's an unrealistic standard because very frequently there is no medical evidence from service demonstrating what the medical problems are. So veterans, pursuant to these statutes and regulations, do submit lay evidence. The evidence that I thought that the evidence wasn't competent here because they said it wasn't credible. That doesn't make any sense, Judge. I mean, there's a vast difference between incompetent evidence. If I have a case at trial and I attempt to introduce incompetent evidence, it's excluded. On the other hand, if I have evidence that's competent, it gets in. It may be found not to be credible, but it's in the record. That's a whole different kind of evidence. And the problem here is the VA attempts to defend it. Well, if you look over at the bottom, our difficulty is to figure out exactly what the CIT was saying and to figure out what the board was saying. If you look at the bottom of page 5 of the CIT decision, pardon me, the CAVC decision, at page 7 of your appendix, nor is it error for the board to determine that lay evidence lacks credibility. Okay? And that's why I'm trying to figure out exactly what the CAVC is. If you look at the top of page 4 of the decision, page 6 of your brief, you'll see there that the CAVC, in characterizing what the board said, lack credibility absent confirmatory medical records. Right? Correct. The problem is... Let's just assume for a moment that the holding of the CIT had been that lay evidence, as defined by the statute, always requires confirmatory clinical records, and without such confirmation, the evidence is not credible. Correct. I think that's another way of saying the same thing, but... You would find that equally offensive? I find it equally offensive, but I think it's much clearer. Here the judge was quite candid. He said it's not competent. And once you say the evidence is not competent, it's never going to be credible. You can't have credible, incompetent evidence. And so the court created an insurmountable barrier for this veteran that the veteran's never going to be able to surmount. But the board also said other things, like the affidavits have slight probative value. I mean, that's a proper analysis, is it not, of medical evidence? Well, not exactly, because here's what they said. They said they have slight probative value and are of no value. Just a second. I'll find it. And lack credibility absent confirmatory clinical records. Right. But I'm just asking about the first portion of that phrase. Well, you can't have it both ways. It can't be slightly probative and lack credibility. That's an inconsistent statement. It's not slightly probative and lack credibility. It either is probative, but it's... Well, one of the difficulties I have with your case is that it isn't quite as pure, I think, as you'd like to make it, although it may end up being that pure after we look at it more, because you have the CABC talking about, well, this long passage of time, these pieces of lay evidence are reflecting way back on a historic period of time. Then if you look at the decision that the board made, the board, in essence, got your client by saying, oh, we, the board, have fully, we have reviewed the lay evidence up one side and down the other, and we put it on one side of the scale. Right. And on the other side of the scale, you know what we put? We put the clinician, Ms. Bernadette Lauber's report on the other side of the scale, and we think her side of the scale weighs more than the lay evidence. The only problem with that is that if you read Lauber, Lauber clearly refused to look at the lay evidence. Exactly. So look at our problem. I don't think there's any way we can get at Lauber, given our jurisdictional construct, right? Well, I think if Lauber's error is endorsed by the board and endorsed by the court and above, then I think you reach it via the court. She did the same thing the court did. She just wasn't sophisticated enough to call it incompetent. She's not an attorney. But that's what she said, in essence. She said, well, there's no contemporaneous medical evidence. I'm not going to deal with these affidavits. What was the state of the record on these so-called either lost records or never existing records or nonexistent? Well, the state of the record is it's unclear. But there's no confirmation that they ever existed. I mean, you suggested in your brief that they were lost, but we haven't established they existed at any time, correct? This veteran found his sergeant. His sergeant said, when this man was under my supervision, he fell apart emotionally. He withdrew. He became inconsistent. He became moody. He was evaluated psychiatrically. He was sent off for a psychiatric evaluation. That's what the sergeant said. You didn't have to read between the lines. The sergeant said it was recommended to the captain that he go. Now, that's different. We don't know whether he went or not. No, we don't know whether he went. We don't know. Is there a statement by the veteran in the record anywhere that he actually saw someone? The record is unclear because in his personal hearing, the veteran doesn't say whether or not he went, but he does say, well, a lot of people wouldn't go, or who can blame a person for not going? He makes some vague comment that I suggested. Let me ask you this. Your client was a beneficiary, in quotes, of a VCAA remand on duty to assist, right? And Ms. Lauber shows up in the game site as a result of that, right? Correct. Okay. What were the instructions to Ms. Lauber? Well, I'm sure she was told. Do we know? Was she instructed by the BVA? The instructions are not in the record, so I don't know. That's right. We don't know, right? But I'm sure, as she says, she was told to review the file and offer an opinion, and she says she did. It hasn't been briefed or argued, and I don't think the court will probably decide the case on this basis, but if a VCAA duty to assist remand is ordered and someone is ordered to review a record and somebody only reviews half of the record, then the duty to assist hasn't been fulfilled. But she reviewed the record. She reviewed the affidavits. She just reviewed the copies. She doesn't say she reviewed the – I don't believe she says that she reviewed the lay evidence. I think she did. Maybe not. And the timing is such that they were in existence. The evaluation revealed a number of layperson affidavits attesting to a change, so you're assuming that she actually read the affidavits. Right. Well, if she read the affidavits, then could she possibly have been saying, because of the passage of time, because of, if you know, the staleness of the affidavits, as her family members were thinking back 25 years, she's saying, I'm going to discount such lay affidavits absent some support that gives them more weight. She never says that in her report, Judge. That concept that, well, they were also, you know, these incompetent affidavits were also linked, that came from the board. That's partially how the board and the VCAA – That's what the board said, but she didn't say it. Her only reason for making the decision that she did was she said, there is no contemporaneous medical evidence to support a finding of service connection. She didn't address the fact that the affidavits were 20 years old. That was added later by the board as a justification. Laubrie never said that. And how else do we prove it? I mean, it was a while ago. The VA has lost the charge. This guy's medical records are not a record. What would happen if, in this case, the board had written a decision saying the record reflects lots of lay evidence, which we've reviewed carefully and thoroughly. We aren't sure ourselves whether Laubrie reviewed carefully the lay evidence because she doesn't write it up. She seems to discount it because of the lack of medical record. But we, the board, understand the law, being that we can't simply throw lay evidence out because it doesn't have medical support. But this particular lay evidence we are going to discount because of the passage of time. And the CAVC did a rubber-stamp affirmance on that. You wouldn't have a leg to stand on, would you? No, because they would have stated the law correctly, right? Well, if they state the law, I would probably still argue, Judge, because I think that if the underlying C&P exam is legally flawed and the board endorses it, says the right thing legally, but we can see they're doing something totally different. I looked very hard. The theory of that case would have to be a process violation. If this court is going to reach down through the CAVC, through the BVA, and back to Laubrie, then I think it has to be because of a failure of process. I've never found, I've looked hard for a case out of this court, even a case out of the CAVC that was process-driven, saying that some examiner had messed up because of the fact that there's a chance for cure. The BVA is as qualified as Laubrie to put the stuff on the scale and judge it. Correct. But it can't weigh it correctly if Laubrie's report is invalid. Wouldn't that be a sort of bold opinion from this court for us to be reversing or remanding on the basis of a messy medical exam at the RO level? Well, I don't see anything wrong with being bold, Judge. We have a veteran who has pursued this claim for 14 years. Well, I have a little problem with being bold when I'm basically sitting on the top of the iceberg and it's out of the water. Well, I don't think the case requires you to be bold. I have absolutely no idea what's going on. I don't think the case requires you to be bold because the judge said, Judge Ivers said in his decision this evidence was incompetent. Because it was incompetent, you know, it didn't have credibility. That's the legal hook for you to make this really, I think, a pretty easy decision. Well, now we can't possibly, you certainly aren't asking us to roll up our sleeves and plop the lay evidence on the scale on one side and for us to decide that your client is entitled to service connection. Absolutely not. I'm asking you to say where the lower court creates a credibility test that's contrary to law. You want what you believe is the correct statement of the law, vacating or remand, and you're back in business. Exactly. And, yeah, let the CAVC then make it right. Let them redo their decision and see what happens. Do they do that or isn't the proper thing for us to kick it back and tell the CAVC to bump it back to the BVA? If necessary, to have the BVA take Ms. Lauber out to the woodshed and make certain that she understands that you can't throw lay evidence aside simply for the lack of medical documentation. It is my great hope, Judge, that if this goes back to the court, the CAVC with the instructions that we've described, that I will have an opportunity to re-argue it, and I will argue to them that the evidence is uncontradicted that my client's entitled to benefits. I'm not going to ask for a remand to the board. They may do that. But what we have is we have a C&P exam that says it's missing. Yeah, but what's missing is you want the CAVC to do it. I can understand why you want to get it over with, but the CAVC is a review court. They're not a fact-finding court. Correct, but if all the evidence is one way, and it is in this case, if the Lauber report is valueless, which I say it is, if the Lauber report is valueless, then all we have are reports that either support my client or are neutral. But if the system mandated a VCAA duty to assist review of this record, then why shouldn't there be a correct review of that record back from that original review? Well, my argument is how many bites out of the apple does the VA get? They've had 14 years to get it right. They haven't gotten it right yet. If we go back to the CAVC, why isn't my guy entitled to a decision based on the record? Now, it may be the VA didn't do a very good job of sabotaging his case with Dr. Lauber. But that's their problem. You're the one that's in charge of arguing for the benefit of your client, and I understand that the passage of time is not good. But if it goes back to the CAVC and you lose on the facts, then you're dead up here. You know that. Sure. Right. But if it goes back through and the system is not pure, if the Lauber messes it up again and you get a funny way of describing it coming back up again, then it comes back into this court, you've probably got some traction. Well, I'm certainly, if it goes back to the CAVC and they send it back to the board, I'm more than happy to continue to pursue it. I'm certainly much better off than I was before I came to the courts. But you will. If the CAVC states the law correctly and then says we understand that you can't throw out lay evidence just because it doesn't have medical backup, but in this case we think the lay evidence can be discounted because of the considerable passage of time, blah, blah, blah, flagging the correct standard of law, I think you're going to be out of luck. Right? It's a possibility. Certainly. Thank you. With the questioning, you've used your rebuttal, but we'll restore it to you. We'll hear from the guy. Mr. Tufo? Thank you. Good morning. May it please the Court. I'd just like to address one issue right off the bat. There are two issues before the Court. We have the threshold jurisdictional issue and we also have a merits-based issue, presuming the Court does indeed have jurisdiction. One of the questions that you asked, Your Honor, was whether Mrs. Labra, when she looked at the full record, whether she indeed considered lay testimony. And pursuant to the remand order that was issued by the BBA in 2001, there are instructions to her which you can find at page 5 of the Government Supplemental Appendix. Wait, wait, wait. Remand order in 2001, is that in the record? It is, Your Honor. It's on page 5 of our Supplemental Appendix. Okay, good. Okay. Can they remand to do the following? That's correct. And if you go to paragraph 3, they state what the scope of the remand is going to be. And they state what needs to be reviewed by Mrs. Labra. That includes the July 1997 and the November 1999 VA examinations and the July 2001 private psychological evaluation. Now that 2001 private psychological evaluation was the evaluation that was done telephonically and included various aspects of the lay testimony concerning people's accounts of how his affect differed both before and after his first term of service. Well, what happened to page 4? This ends in the middle of a sentence, the document I have here. Tagged record on appeal is... The document, if I'm looking at the same document... We don't see the entirety of the remand order. Your Honor, I agree, and my copy doesn't have that either. I suspect that that page was somehow left out. If it pleases the Court, I would be happy to attach the final page 4. Could you supply that to the Court? Yes, we could. That would be helpful, Mr. Dufault. Let's assume, just for purposes of argument, Mr. Dufault, that the CAVC wrote a decision, that the Board and the CAVC had both written decisions that said this case involves a certain amount of lay testimony. The lay testimony, however, is not corroborated by any medical confirmation. We therefore find the lay testimony not credible. Would the government think... Would the government think that was a correct way to treat the lay evidence? Well, it's tough when you use the word credible. I'm not sure if that's double for sufficient. If it were sufficient, the regulations require... Let's start with credible. I mean, if it's not credible, it won't be believed. It means it's been admitted, right? But it means it won't be believed. Let's take that for the definition of credible. So the legal interpretation of the lay evidence, as I've hypothesized, okay, is that lay evidence that is not confirmed by clinical records, is not credible, period. If the court were to go that far, then perhaps we would, in fact, have a violation of the regulation which states that you have to consider both lay and medical evidence. But the regulations, the way they're designed, it has to be competent evidence. And lay evidence in and of itself is not competent to render a medical diagnosis. And that's been stated... Oh, wait, wait, wait. Are you telling me that in a case in which there's only lay evidence, then service connection can never be established? Not necessarily. There could perhaps be instances where the lay evidence does rise to that level. But under several cases by the CAVC and what's built into the statute, you have to have competent evidence. And in the CAVC, in savage... Well, there's been no challenge to the lay evidence in this record as being incompetent. You've mounted no argument that the sergeant was a drug addict or that the brother and the sister in the arrest were a wacko or totally unbelievable. Well, that wouldn't be an issue of competency. I think that would go down to credibility and perhaps probative value. Isn't all lay evidence competent in the system? Well, if you have to look at what it's being used for, if it's being used to show that there are actually symptoms of a particular ailment, then it would certainly be competent. And if you're looking at it from a temporal perspective, when did these symptoms first arrive, then it would certainly be competent. But if you're just looking at lay testimony and somebody's saying, I had this pain in my heart, I think I had a congenitive heart problem, that's not enough. That's not sufficient to establish that there actually is indeed a heart condition. You need some sort of medical evidence. Now, the safeguard that's in the system is that you have a paternalistic system that's set up. Well, you certainly haven't sliced... Nobody's sliced the case that thin up until this moment of time as to this particular evidence. No. I mean, no one's broken down temporal as opposed to causation as opposed to etiology of a medical illness. And what's very important is also... There's no case that suggests that lay evidence has to be sliced that thin for competence, do you? No. And thankfully, that's not what happened below either. What happened below was the court looked at both lay evidence and medical evidence. It weighed the evidence, as was its duty to do it. Well, I know. That's why I raise it as a hypothetical. I know exactly what your theory of the case is, which is that this lay evidence was looked at on the VCAA remand, it was looked at by the board, and it was looked back by the CABC. And that's all they had to do was look at it, and once they've looked at it, we're ousted of jurisdiction because it's a fact of law. And I know that's your theory of the case, but the theory of the case of your adversary is dramatically different, and I was raising that hypothetical with you to see where you stood. And I understood you to say, correct me if I'm wrong, that if you had an instance in which the board and the CABC were saying, we treat lay evidence as incredible or incompetent, whatever word you want to use, in a general category, unless lay evidence has medical support. And you've said at least if you're talking about timing or onset or degree of something that may be recognized, then that would be a bad ruling of law. Correct. Correct. Because the statutes require, the statutes specifically require, and the regulations require, 3.307 has to be competent lay or medical evidence that has to be reviewed. If the court, if the CABC below said, we're not going to look at it, sorry, you don't have any cooperative medical evidence, we're just going to discount it as being inherently incredible, then we would have a problem there. And that's what Mr. Buchanan is urging the court actually happened. But it didn't. Why isn't it fair for us sitting up here to say, we frankly don't know? We have very strong language in Ms. Lauber's affidavit that suggests that she wasn't interested in lay evidence unless it had medical support. I think a fair reading of her opinion. Then you get up to the board level and it gets a little fuzzier, right? And you get to CABC, it's even fuzzier, but there are tracks in the snow, if you will, that would suggest that perhaps the lay evidence in this case has either been deemed incompetent or not credible because of the lack of contemporaneous medical support. If that's the case, what's wrong with a correct statement of the law in this case and a remand, which is all that the appellant's asking for? Because the court doesn't have jurisdiction to consider this. Well, assume that we, that's why I've spent all this time trying to find out whether the fulcrum on which the teeter-totter sits is a legal question or a fact question. Right. What you're looking for when you're sitting at that point is some sort of plausible basis. That's what the CABC had to do. Pursuant to the clearly erroneous standard of review, it had to find a plausible basis for the decision below. The decision of the BBA has those footprints. You can follow it. You can see what its reasoning was. You can look. I mean, first of all, look at the remand notice. I mean, Ms. Labra didn't, indeed, look at those lay statements, and she looked at the earlier private medical examinations that were provided by Mr. Buchanan. We have the footprints. We have the weight of evidence that existed. But it doesn't mean that you can read all of the lay evidence until the cows come home and read it and weep, and then you can say I'm not going to pay attention to it because it lacks A or B. And if you're saying I read it, I certainly considered it, but I threw it out because it didn't have any medical support. That should be problematic, shouldn't it? Not necessarily. You have to look at precisely what the BBA did. It didn't state on a de facto basis that if you have lay testimony that's not supported, we're not going to look at it. What it said was we looked at the lay testimony, and this was pretty much lay persons looking back 20 years in time and surmising about how Mr. Buchanan's affect changed, perhaps pursuant to this psychological ailment that he was suffering from. They said we've got that. We've looked at that. And then we also have this medical evidence that was conducted. We have a paucity of evidence in the record that suggests that anything happened until 1977. So we're outside of that one-year presumption period. We don't have any medical evidence that suggests there was 10%. What bothers me, if you haven't already got the drift, is that there's a catch-22 situation built in here that troubles me, which is that if the Bernadette Laubers of the world can put their thumb on the scale, if you will, to throw out lay evidence because it doesn't have medical support, and then there's no effective way for this court to sort of get it back, then you sort of take your chances and if the BBA wants to say, oh, well, I'm just going to credit that type of a report more, I'll look at the lay evidence, put it on the scale with Lauber, and then decide she weighs more, then it becomes virtually impossible for, I guess, us, you would say, to be doing the job that the CAVC and the BBA ought to do to stop that, right? But it's not a catch-22. All that you're describing and explaining is what happens below before the BBA, their trier's effect. It's within their obligation and responsibility to weigh facts, to weigh evidence, to assign certain amounts of probative value to some evidence over others. I mean, they have to do that. The safeguard is the regulations and the statutes state the BBA must look at both types of evidence, and that's precisely what happened here. There's no catch-22. In the same situation with the same type of evidence, the BBA with a different veteran could have stated, you know what, this lay evidence is sufficient. I can see a triggering point in the onset of schizophrenia. It was within that presumption period. Based on the medical evidence that looked at that, they state that it would have been in the level of 10 percent, therefore we're going to give them service caution. That just didn't happen here. That wasn't defining the fact. Well, the difficulty I'm having is that look at, I don't know what look at means. I mean, there's no suggestion here that people can necessarily look at it. But once you look at it, it's a question of whether you agree it's valid to consider. And it seemed to me, as I was listening to your exchange with Judge Clevenger, that what you agreed with him would have been an incorrect statement of law seems to be exactly what the BBA said, which is lack credibility, absent confirmatory clinical records to substantiate some recollections. Now, I guess you could take other portions of the BBA and say, well, they suggest otherwise. But isn't it correct that at least if you take that one sentence as a definitive statement, that that is an incorrect statement of law? Well, that's when things start to get dangerous. You extract one statement, read it in isolation. Well, just answer my question. I mean, you can argue about whether or not we have to read it in context. But that statement. Arguably, yes. That's our job. If a lower court talks out of both sides of its mouth, we've got to figure out which side of the mouth we think was really driving what they were doing. And we may be wrong in some instances but not in others. From your perspective, other than the cost of the remand, I don't know what the government stands to lose with a correct statement of the law and vacating a remand here. You know, it would just seem to me that someone ought to be policing this system so that when they issue a remand order to Bernadette that you pointed out to us at 85 or whatever it was, they ought to be saying to her that, you know, you must, competent lay evidence must be credited. Now, it doesn't mean that it wins, right? Well, in terms of safeguards, we have the CAVC, which has its standard review over factual determinations made by the BVA. I mean, that's set in place. That's the way it's set up. And if you look at the entire decision, the important point in the decision, and the conclusion is on page 11 of the decision, page 22 of the appendix. And at the bottom of the page, the BVA specifically states, after consideration of all the evidence of record, the board finds that the opinion of the examiner, which is Ms. Lauber, who conducted the March 2002 VA psychiatric evaluation, to be the most persuasive evidence of record. Because it relies on objective medical documents. Because it relies on objective medical documents. Now, I didn't see an objective medical document in the record that stated that there was no service connection. Was there a medical record in the record? There's no medical record that specifically states the negative, that she doesn't have the examiner in the area. Then what objective medical documents could they have been relying on? What they're relying on are the medical documents that are in the record, and they've got them listed, I believe, in hers. There's two medical records in the record that attest to service connection, correct? Based solely upon Mr. Buchanan's statement to a physician that he saw something in 1974. Yeah, but it's a doctor. It's a doctor, right? What's that? It's a doctor. It's a medical record. A doctor said, I think the guy has service connection. Oh, okay. We're referring to two different things. See, what I got at was, I highlighted with my little yellow highlighter, that same language you pointed to, and I said to myself, this is a little slippery because they love Bernadette's conclusion. It's most persuasive because it relies on objective medical documents in the record. I couldn't find any objective medical records and documents in the record that were negative. Well, I have two points to make. First of all, under this Court's decision in Maxson v. Gilbert, the mere passage of time when somebody doesn't seek treatment for a condition can be indicia that they didn't have that condition at that time. Right, but the end of this case is interesting because you've also got what appears to be a lost record situation or the possibility of a lost record situation, and there's a body of law that says thumb goes on the scale for the veteran a little bit, a little bit, you know, if the government can't produce a record. Right. Well, in response to that, I mean, the BVA made a factual determination that there's no identified evidence that has not been accounted for and the veteran's attorney has been given the opportunity to submit a written argument. The same attorney here that's representing Mr. Buchanan sent a letter back to the RO's office when he got the VCA letter and said we don't have any further evidence. So right now we just have the possibility that there might be evidence. Well, clearly they didn't have the evidence. That was why, I mean, that was why they conducted a search of the medical records. I mean, it's not a big concession to say we don't have the evidence. Nobody had ever maintained they had the evidence. But what we're saying is that Buchanan further actually was evidence just because there isn't evidence there. That suggests that there wasn't any treatment and there wasn't any evidence that he had a psychiatric condition right after service. I think the question is the statement that you called to our attention, that phrase because it relies on objective medical documents, was the BVA, did the BVA really mean to say because it relies on the absence of objective medical documents or are they referring to an absence of documents or tangible documents? Tangible documents that I think that would suggest that the onset of schizophrenia occurred at the earliest, at 1977. That's how I read that. Where are those documents in the record? They're cited to in both examiners' opinions. And in the record they state that there are different examiners that looked and said we noted first the onset of this psychosis in 1977 or 1978. It may have existed before, but there's no evidence to suggest that. And that's what they've stated. Other than the buddy testimony. Correct. And the testimony of the family members. Correct. And then the BVA, which it was his obligation, weighed that evidence and said that there hasn't been a substantiation of having a psychiatric condition within one year of discharge or while in service the first time. Maybe I'm misunderstanding. Are we saying the same thing? I mean, so that really we're not relying on objective medical evidence. The bottom line is the reliance was on the lack of objective medical evidence. Both, I would say. Objective evidence that the onset was first found in a particular year, 1977, and two, that there wasn't anything to suggest that it occurred earlier. And that's what they're relying upon in terms of objective medical evidence. But, again, this just shows the problems that this court would have engaging in factual determinations. We don't know. This court wasn't a trier of fact. The CAVC wasn't a trier of fact. The BVA knows best. It was there. Well, you know that this is the government's mantra always, but the short of the matter is we're charged with the obligation to keep the law on us downstairs. And if there is, as I think you've agreed, if there is a circumstance in which a category of lay evidence is simply being rejected, either as incredible or incompetent or whatever you want to call it, because it doesn't have confirmatory medical records, you said that would be the wrong thing. That's correct. Mr. Foe, thank you. Thank you. Mr. Mooney, do you have your rebuttal? Yes. Yes, we do. Yes, you have your full five minutes if you need it. Thank you very much. Thank you. Thank you. The case is submitted.